[No. 42678.    En Banc.    February 7, 1974.]

THE STATE OF WASHINGTON, *Respondent,* v. PETER GLUCK, *Petitioner.*

*James R. Short,* for petitioner.

*Christopher T. Bayley, Prosecuting Attorney,* and *John E. Nelson, Deputy,* for respondent.

HAMILTON, J.—The defendant, Peter Gluck, was charged with the crime of burglary in the second degree. He entered a plea of not guilty and was tried and convicted by a jury. His conviction was affirmed by the Court of Appeals, Division One. We granted his petition for review.

Between 4 and 5 a.m. on July 24, 1971, two city policemen were patrolling an industrial area of Seattle, Washington, in which there had been an increasing number of burglaries. As the officers approached a tavern, which was in an isolated part of a block, a car parked in front of the tavern was driven away from the curb and its lights turned on. After following the car for about 1½ miles, the officers stopped it and requested identification of the two occupants. The driver of the vehicle appeared to be perspiring heavily; Peter Gluck was the passenger and he likewise was perspiring. One of the officers saw a blue canvas bag on the back floor of the car.

The police then radioed for an information check on these individuals and on the tavern, but before a reply was received, the officers were ordered to respond to an emergency call. While so engaged, the officers were notified by radio of a recent forcible entry of the tavern. They supplied police headquarters with the description of the suspect vehicle and a cursory description of the individuals, and a stop order went out for the vehicle and for apprehension of Gluck and the driver as burglary suspects. In about an hour, the car was stopped by other officers and a call was sent out for the two officers who had made the initial contact. They arrived within minutes. Gluck and the driver were searched, handcuffed, and placed under arrest in different police vehicles. Simultaneously, one of the officers searched the car and, upon looking into the front seat area, observed the handles of a blue canvas bag. The bag contained burglary tools, bills, a large amount of coins, and a check made out to the tavern.

Defendant raises the following questions: (1) whether

the initial stop was legally justified, (2) whether the police had probable cause to arrest the defendant upon the second stop, and (3) whether the police had probable cause to search the car and seize the incriminating blue bag.

Defendant first challenges the legal justification for the initial stop by the officers. The stopping of vehicles for traffic or general investigation has been specifically held to be noncustodial in nature. *Lowe v. United States*, 407 F.2d 1391 (9th Cir. 1969); *Jennings v. United States*, 391 F.2d 512 (5th Cir. 1968). It has also been held that traffic enforcement officers may stop motorists for routine checks, and such stopping does not amount to an arrest or unlawful stopping. *United States v. Bonanno*, 180 F. Supp. 71 (S.D.N.Y. 1960), *rev'd on other grounds sub nom., United States v. Bufalino*, 285 F.2d 408 (2d Cir. 1960); *McCarthy v. United States*, 264 F.2d 473 (8th Cir. 1959); *Smith v. United States*, 264 F.2d 469 (8th Cir. 1959). It follows, therefore, that where officers entertain a well-founded suspicion not amounting to probable cause, they may stop the suspected person, identify themselves and require the suspect to identify himself and explain his activity without being adjudged to have made a formal arrest. *State v. Rankin*, 477 S.W.2d 72 (Mo. 1972); *United States v. Bonanno, supra* at 80.

In the case before us, the officers clearly had such a "well-founded" suspicion and were fully justified in stopping the individuals involved for a brief inquiry. We observe, however, that the information before the officers at the time of the initial investigatory stop would not have been enough to amount to probable cause for arrest or for search.

The defendant next questions whether the officers had probable cause to arrest him and the driver upon the second stop of the vehicle. The standard of probable cause to justify an arrest is well recognized. Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a

man of reasonable caution in a belief that an offense has been or is being committed. *Beck v. Ohio,* 379 U.S. 89, 91, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964); *Henry v. United States,* 361 U.S. 98, 102, 4 L. Ed. 2d 134, 80 S. Ct. 168 (1959); *Brinegar v. United States,* 338 U.S. 160, 175, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949); *State v. Parker,* 79 Wn.2d 326, 485 P.2d 60 (1971); *State v. Ellison,* 77 Wn.2d 874, 467 P.2d 839 (1970).

Viewing the composite chronology of events in this case, we cannot say that it was unreasonable for the officers to have drawn the conclusion that the defendant had been engaged in the commission of a crime. While we have noted that the circumstances surrounding the initial stop would not have justified an arrest at that time, the additional knowledge that a burglary had in fact occurred at the tavern where the police had first observed the defendant was enough to justify the belief that the defendant had been involved in it.

■ Having held that the arrest of the defendant was indeed based on probable cause, we turn now to the issue of whether the contemporaneous search of the motor vehicle was either incident to a lawful arrest or justified as an inventory search. The United States Supreme Court has often held that searches of motor vehicles must meet the test of reasonableness under the Fourth Amendment before evidence obtained as a result of such searches is admissible. *Preston v. United States,* 376 U.S. 364, 11 L. Ed. 2d 777, 84 S. Ct. 881 (1964); *Brinegar v. United States, supra; Carroll v. United States,* 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925).

The cases have clearly indicated, however, that common sense dictates that questions involving the searches of motor vehicles or other things readily moved cannot be treated as identical to questions arising out of searches of fixed structures like houses. For this reason what may be an unreasonable search of a house may be reasonable in the case of a motor car. *Preston v. United States, supra* at 366-67; *State v. Hoffman,* 64 Wn.2d 445, 392 P.2d 237

(1964); *State v. Jones,* 2 Wn. App. 627, 472 P.2d 402 (1970).

█ Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused, or of things under the accused's immediate control, for weapons or for the fruits of or implements used to commit the crime. The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to discover and prevent the loss or destruction of evidence of the crime. *Preston v. United States, supra* at 367; *Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970). Since the individuals involved in this case were taken into custody contemporaneously with the search of their vehicle, the search is readily justified as a search incident to a lawful arrest carried out with the reasonable belief that the vehicle was carrying fruits of the crime.

█ We do not, however, feel that the state's assertion that the search was justified as an inventory of the vehicle and its contents prior to impoundment is a valid one in this context. While we have long recognized inventory searches as a practical necessity, *State v. Montague,* 73 Wn.2d 381, 438 P.2d 571 (1968); *State v. Olsen,* 43 Wn.2d 726, 263 P.2d 824 (1953); *State v. Patterson,* 8 Wn. App. 177, 504 P.2d 1197 (1973); *State v. Jones,* 2 Wn. App. 627, 472 P.2d 402 (1970); *State v. Potts,* 1 Wn. App. 614, 464 P.2d 742 (1969), we have also insisted that they be conducted in good faith for the purposes of (1) finding, listing, and securing from loss during detention, property belonging to a detained person, (2) protecting police from liability due to dishonest claims of theft, and (3) protecting temporary storage bailees against false charges. *State v. Montague, supra* at 385-87; *State v. Michaels,* 60 Wn.2d 638, 644-46, 374 P.2d 989 (1962).

The record here reveals merely that the officers at trial asserted that they "pulled an inventory search of the vehicle for personal property." The record does not indicate

that the officers made a complete list of other items in the vehicle nor was it asserted that the officers completely searched, both under the hood and in the trunk, the entire vehicle after they found the incriminating bag. Without more, it cannot fairly be characterized as an inventory search.

The judgment of the Court of Appeals is affirmed.

HALE, C.J., and FINLEY, HUNTER, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

ROSELLINI, J., concurs in the result.