[No. 7274-9-I.   Division One.   November 26, 1979.]

*In the Matter of the Welfare of*
TYROME WATSON.

*In the Matter of the Welfare of*
JEROME WATSON.

*Slade Gorton, Attorney General,* and *Philip G. Hubbard, Assistant,* for appellant.

*Mary F. Koehler,* for respondent.

*Frederick Rogovy,* for guardian ad litem.

DORE, J.—This is an appeal from a trial court order which denied the petitions for permanent deprivation and continued dependency of the Department of Social and Health Services.

## ISSUE

Whether the trial court erred in denying the petitions of the Department of Social and Health Services for permanent deprivation and continued dependency.

## FACTS

In January 1972, Ms. Watson, the respondent, placed her 3–month–old twins, Jerome and Tyrome, in the temporary custody of the Department of Social and Health Services (Department), with the hope that she could solve certain domestic problems.

Between January 1972 and April 1973, the twins were moved back and forth between numerous foster homes and the Watson home. Finally in April 1973, the twins were placed in the foster home of the Harbisons where they have resided up to the present time.

Prior to 1973, the mother made repeated efforts to contact the twins but was rebuffed by the Department. Since 1973, respondent has not seen or talked with the twins. In

April 1978, the Department filed a petition for dependency and permanent deprivation, pursuant to former RCW 13.04.100[1] and former RCW 13.04.140.[2] The basis for the petition included (1) the children were abandoned by their parents (2) their parents were unable to care for them, and (3) the children had formed psychological bonds with their foster parents.

A lengthy trial was held in December 1978. The Department's case consisted primarily of the expert testimony of caseworkers and two psychiatrists. They testified that the twins were suffering from "maternal deprivation" (severe neglect coupled with multiple moves) during the first 18 months of their lives and that such deprivation has adversely affected the twins emotionally. The psychiatrist further testified that to remove the twins from their foster mother would be a potential disaster.

Respondent mother testified that she never intended to abandon the twins and dearly loved them and could adequately care for them. The court heard testimony that the respondent had successfully raised her other three children.

The trial court denied the deprivation and dependency petitions and ordered the twins returned to respondent.

---

[1]RCW 13.04.100 stated in relevant part:

"An order of commitment may be temporary or permanent in the discretion of the court, and may be revoked or modified as the circumstances of the case may thereafter require."

[2]RCW 13.04.140 stated in part: "[T]hat the care, custody and discipline of a dependent or delinquent child as defined in this chapter shall approximate as nearly as may be that which should be given by its parents, and in all cases where it can be properly done, the dependent or delinquent child as defined in this chapter shall be placed in an approved family and may become a member of the family, by adoption or otherwise. No dependent or delinquent child as defined in this chapter shall be taken from the custody of its parent, parents or legal guardian, without the consent of such parent, parents or guardian, unless the court shall find such parent, parents or guardian is incapable or has failed or neglected to provide proper maintenance, training and education for said child; or unless said child has been tried on probation in said custody, and has failed to reform, or unless the court shall find that the welfare of said child requires that his custody shall be taken from said parent or guardian."

In March 1979, this court held in *In re Watson*, 23 Wn. App. 21, 594 P.2d 947 (1979), that discretionary review should be granted pursuant to RAP 2.3(b)(1), and that the restoration of custody to respondent should be stayed pending this appeal. As Watson did not appeal this decision, further discussion on this jurisdictional issue would be nonproductive.

## DECISION

The Department initially argues that the trial court abused its discretion when it refused to accept the medical conclusions reached by two of the Department's expert witnesses.

The Department elicited testimony from two psychiatrists, Drs. Raskin and Reiter, to the effect that the twins were suffering from "maternal deprivation" and abandonment. The doctors testified that the deprivation was caused by the many custodial moves made by the twins. Dr. Raskin concluded that the moves subjected the twins to abandonment. He defined abandonment as:

> At any time a child is living with an individual, and any time a child becomes involved with a person, that person becomes meaningful to that child, and if that is terminated, that is abandonment.

The trial court rejected the testimony of the psychiatrists in finding of fact No. 12, stating:

> Little consideration will be given to this testimony as the doctor told us about psychiatric concepts and philosophies rather than any specifics relating to the Watson twins.
> The doctors' definition of abandonment is "preposterous" in that it is impossible for an 18 month old child to formulate a concept of severe abandonment such as the Doctor described.

■ It is the well settled law of this state that the trial judge is empowered with the discretion to determine the credibility of witnesses and the weight which should be given their testimony. *In re Marriage of Mahalingam*, 21 Wn. App. 228, 584 P.2d 971 (1978).

■ It is also true that a trial judge can accept or refuse expert testimony as long as he does not act in an arbitrary and capricious manner. This principle was enunciated in *Brewer v. Copeland*, 86 Wn.2d 58, 74, 542 P.2d 445 (1975), wherein the court stated:

A trial court has the right to reject expert testimony in whole or in part in accordance with its views as to the persuasive character of that evidence. In light of the court's explanation, we cannot say the court acted arbitrarily or capriciously in refusing to accept the evidence as to proper speed.

Applying the rationale of *Brewer* to the subject case, we are unable to say that the trial court acted arbitrarily or capriciously in refusing to give any weight to the expert testimony of Drs. Reiter and Raskin. The record indicates that neither of the doctors were board–certified psychiatrists. The court noted in its oral opinion, and in finding of fact No. 9, that "both psychiatrists were slanted in their thinking favorably toward the Harbisons, and very unfavorably toward Watson."

■ The Department's remaining assignments of error deal with the insufficiency of the evidence to support the findings and conclusions of the trial court. Findings of fact by the trial court will not be disturbed if there is substantial evidence to support those findings. *Sylvester v. Imhoff*, 81 Wn.2d 637, 503 P.2d 734 (1972).

The Department argues that there is no substantial evidence to support findings of fact Nos. 7[3] and 20,[4] which found that the Department did not prove respondent was unfit to parent the twins. We disagree.

---

[3]"It is human nature to fight for self–preservation. This Mary Watson has done. Evidence has been presented to show that Mrs. Watson's emotional reactions have not been detrimental to her parenting abilities. No facts of neglect, undernourishment or failing of the three other children in school, community and family function have been presented. Instead, the contrary has been shown."

[4]"There has been no clear, cogent and convincing evidence produced by the State to show that Mrs. Watson is an unfit parent at the present time. The evidence is to the contrary."

It is not the role of an appellate court to substitute its findings for those of the trial court. This principle was best enunciated in *In re Sego,* 82 Wn.2d 736, 513 P.2d 831 (1973), wherein the court stated at pages 739–40:

As an appellate tribunal, we are not entitled to weigh either the evidence or the credibility of witnesses even though we may disagree with the trial court in either regard. The trial court has the witnesses before it and is able to observe them and their demeanor upon the witness stand. It is more capable of resolving questions touching upon both weight and credibility than we are.

In the subject case substantial evidence exists to support the findings that respondent is a fit parent for the twins. Testimony was produced indicating that respondent's three older children were well integrated into society, were above average in school, and participated in numerous extracurricular activities. The trial court's oral opinion placed a great deal of emphasis on this evidence, stating:

The Court was impressed with the way these three children have developed, two boys and the little girl. It looks to me that the older boy certainly is a well–integrated child. It appears that he gets along with everybody. He is doing way above average, way above normal in many fields. He has athletic ability. He has mental ability here by winning these certificates. There wasn't that much said about the second boy, but apparently he is average. And the little girl seemed to be doing well. Things were brought here from school, little things they do in school, and it looks to me as if these three children are doing well.

There is no evidence that Mrs. Watson has failed to care for these children. There is no evidence here that she neglected them since she has been alone with them. It looks like they have been well nurtured and developed.

We find that findings of fact Nos. 7 and 20 are supported by substantial evidence and those findings will not be disturbed.

The Department's final assignment of error concerns finding of fact No. 17 which states:

Ms. Watson's lack of visitation, gifts, cards and continuous inquiries into the twin's well–being, does not constitute abandonment by the mother.

██ This "finding" is actually a conclusion of law and will be treated as such on appeal. *State v. Reader's Digest Ass'n*, 81 Wn.2d 259, 501 P.2d 290 (1972). The basis for the court's conclusion may be ascertained by resort to the trial court's oral opinion. *Dickson v. United States Fidelity & Guar. Co.*, 77 Wn.2d 785, 791, 466 P.2d 515 (1970).

█ Abandonment requires an intention by the parent to relinquish all claims to the child. *In re Hagen*, 21 Wn. App. 169, 584 P.2d 446 (1978). This court stated at pages 175–76:

> Abandonment requires an intention on the part of the parents to permanently relinquish all claims to the child. We find no evidence that Mrs. Hagen ever *expressly* intended to divest herself permanently of the responsibility of caring for Tracy and Terry. Rather, the record shows that she at all times manifested a desire to be reunited with her children. We do not condone Mrs. Hagen's actions and understand that at some point declarations of love and affection cannot override a parent's continued disregard of her children's welfare. Had the juvenile authorities made more of an affirmative effort to reunite this family, we might be more critical of Mrs. Hagen's actions and attitudes. However, as the record stands, we do not find substantial evidence that Mrs. Hagen *impliedly* intended to relinquish all claim to her children.

(Citations omitted.)

The evidence is uncontroverted that the twins were turned over to the Department temporarily. Second, respondent made repeated efforts to contact the twins but was unable to do so because of the Department's unwillingness to cooperate. Finally, in a letter addressed to the Department, respondent expressed a great deal of love and affection for her twins. The record clearly shows that

respondent never intended to permanently relinquish all claim to the twins, and the trial judge so found.

CALLOW, C.J., and ANDERSEN, J., concur.