[No. 4442-4-III.  Division Three.  July 6, 1982.]

THE STATE OF WASHINGTON, *Appellant,* v. WILLIAM JAMES TOCKI, *Respondent.*

*Donald C. Brockett, Prosecuting Attorney,* and *Robert P. Kingsley, Deputy,* for appellant.

*Roger A. Felice* and *Felice & Clayton,* for respondent.

GREEN, J.—The State appeals from an order suppressing a gun and dismissing its charge against the defendant William James Tocki for being a felon in possession of a firearm. Error is assigned to (1) the court's failure to adopt certain proposed findings, and (2) its conclusion defendant's Fourth Amendment rights were violated when he was detained for questioning and searched. We affirm.

The court's findings reflect that on January 24, 1981, between 2 and 3 o'clock in the morning, Deputies Ruetsch and Mulvey of the Spokane County Sheriff's Office were patrolling an area on east Sprague in a marked patrol car. Deputy Mulvey noticed movement in an automobile parked

in front of the New Haven Apartments. They stopped and parked their patrol car behind the vehicle. Deputy Ruetsch approached the vehicle and peered through the windows. He saw defendant in the passenger side of the vehicle, slumped over toward the door. He opened the unlocked car door and defendant sat up. Upon being asked to identify himself, defendant produced a valid driver's license. Deputy Mulvey then initiated a radio check on defendant's background while Deputy Ruetsch asked him if he had a gun, to which he responded, "No." Nevertheless, the deputy told defendant to get out of the car.

The court further found a pat–down search of defendant's clothing was conducted. A pocketknife was removed from the left front pocket, and a small baggie of marijuana dropped to the ground. Defendant was then placed in the back seat of the patrol car while the officers continued the radio check.

At this point, the owner of the automobile approached the deputies from the apartment. She told them although defendant was an unwanted passenger, she knew he was in the car and had left him there to sleep when she went into her apartment. She also stated he had a gun in his boot and was carrying marijuana. Deputy Mulvey conducted a second pat–down search and felt a gap in defendant's boot. Upon searching the back seat of the patrol car, where defendant had been sitting, he recovered a .38 caliber revolver. The radio check revealed defendant had a criminal record.

Defendant was charged with being a felon in possession of a firearm, RCW 9.41.040. He moved to suppress the gun, claiming the investigative stop violated his Fourth Amendment rights. He testified he fell asleep in a woman's car after meeting her at a bar, was disoriented when awakened by Deputy Ruetsch, and consequently thought the car belonged to him.

The court granted defendant's motion. It found the deputies stopped and investigated defendant because: (1) the area had a high incidence of crime; (2) the deputies ini-

tially suspected defendant was a person for whom a bench warrant had been issued, and who earlier that evening had fled into the apartments from a vehicle they stopped for a traffic violation; and (3) upon approaching the vehicle, Deputy Ruetsch recognized defendant from an incident which occurred a week earlier when defendant was detained by other officers for a suspected traffic violation. Those officers advised Deputy Ruetsch that at one time defendant had carried a firearm. The court also found, however, the evidence did not establish that defendant attempted to conceal himself from the officers.

On these facts, the court concluded that although the movement in the vehicle warranted the officers' initial stop to look into the vehicle, there were no facts which would create a reasonable suspicion of criminal activity to justify detaining defendant for questioning. The gun was ordered suppressed and the charge dismissed. The State appeals.

The State's contentions must be reviewed against the backdrop of the Fourth Amendment, which applies whenever a person is "seized"; *i.e.,* his freedom of movement is restrained by police officers and he believes he is not free to leave. *State v. Stroud,* 30 Wn. App. 392, 394–95, 634 P.2d 316 (1981). The Fourth Amendment requires that such seizures be reasonable. Although the touchstone of reasonableness is probable cause, police officers may briefly detain a person in order to investigate his or her activities if, prior to such detention, they have a well founded suspicion, not amounting to probable cause, that the person is engaged in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *State v. White,* 97 Wn.2d 92, 105, 640 P.2d 1061 (1982); *State v. Gluck,* 83 Wn.2d 424, 426, 518 P.2d 703 (1974); *State v. Freeman,* 17 Wn. App. 377, 380, 563 P.2d 1283 (1977). However, investigative stops are carefully circumscribed—the officer's suspicion must be based on specific, objective facts, *State v. White, supra* at 97; *State v. Stroud, supra* at 398 n.5, and the more significant the intrusion, the more cause they must have to justify their suspicion. *State v. Byers,* 85

Wn.2d 783, 787, 539 P.2d 833 (1975), *rev'd on reh'g on other grounds,* 88 Wn.2d 1, 559 P.2d 1334 (1977). The totality of the circumstances must be taken into account in balancing the degree to which the intrusion advances public concern, and the severity of the interference with individual liberty. *State v. Hobart,* 94 Wn.2d 437, 443, 617 P.2d 429 (1980); *State v. Stroud, supra* at 397.

The State challenges the failure of the trial court to enter findings that (1) the officers suspected vehicle prowling, and (2) Officer Ruetsch recognized defendant as having a criminal record for burglary or theft.[1] It is conceded there is no fundamental constitutional right involved here requiring independent review of the record by this court because the State and not the defendant has appealed. *Compare State v. Byers, supra, with State v. Carner,* 28 Wn. App. 439, 441, 624 P.2d 204 (1981). It is argued, however, the officers' testimony was undisputed and those facts, added to the totality of the circumstances, justified the officers' actions.

Since the evidence which the State claims supports a reasonable suspicion of criminal activity on the officers' part before they awakened and questioned defendant is based purely on their testimony, the officers' credibility is crucial. Questions involving credibility are peculiarly for the trial court. This rule applies even where the testimony is uncontradicted, unless it is arbitrarily rejected. The court, however, is entitled to draw from the evidence all inferences which are fairly deducible therefrom and does not act arbitrarily in refusing to base a finding on testimony which is inherently improbable or unpersuasive or which contains discrepancies or inconsistencies. *See Brewer v. Copeland,*

---

[1]The State also challenges the court's failure to find that defendant told the officers he was the owner of the automobile, but could not produce the keys or registration. The State, however, admits the seizure occurred when Officer Ruetsch opened the car door and requested defendant to identify himself. Defendant's statement was made in response to Officer Ruetsch's question after he told defendant to exit the vehicle. Since the statement was made after the seizure, it is irrelevant to determining whether the seizure was justified.

86 Wn.2d 58, 74, 542 P.2d 445 (1975); *In re Watson*, 25 Wn. App. 508, 512, 610 P.2d 367 (1979); *Dempsey v. Joe Pignataro Chevrolet, Inc.*, 22 Wn. App. 384, 390, 589 P.2d 1265 (1979); *Meeker v. Howard*, 7 Wn. App. 169, 171, 499 P.2d 53 (1972).

Deputy Mulvey testified he decided to make the investigative stop when he saw movement in the parked automobile. Although the officers testified they initially thought defendant may have been a vehicle prowler, or the person for whom they had an arrest warrant and who had earlier eluded them in the vicinity of the New Haven Apartments, they also stated those facts were not in their investigative report. They agreed their report normally included all significant considerations. Officer Mulvey testified they had received no reports of criminal activity in the area that evening, and nothing indicated there were ever problems in that area with vehicle prowling. He stated the automobile was readily observable, legally parked under adequate lighting, the engine was not running, and defendant was not seated behind the steering wheel.

Deputy Ruetsch testified that when he approached the vehicle, there was no movement by defendant, no evidence the car had been entered illegally, and no evidence inconsistent with the possibility defendant was sleeping—in short, nothing reflecting criminal activity. Although Deputy Ruetsch received accurate identification from defendant, without asking him to explain his activities, the deputy asked defendant if he had a gun.[2] And, even though defendant replied, "No", the officer told him to get out of the car and conducted a pat–down search which the officer testified was based solely on the knowledge defendant had previously carried a gun.

From this testimony, the court could have concluded

---

[2]In light of these facts, the seizure may have exceeded the scope of an investigative stop. The officers focused their investigation beyond ascertaining defendant's identification and requesting an explanation of his activities. *See State v. Moreno*, 21 Wn. App. 430, 434, 585 P.2d 481 (1978).

there was no substantial evidence to support a finding the officers investigated because they suspected defendant, who had a criminal record, was engaged in vehicle prowling. Hence, such findings were not entered. The trial court here had the witnesses before it. It is not for this court to resolve questions of weight and credibility. *State v. Carner, supra* at 441. On review of the record, we cannot say the court acted arbitrarily, *i.e.,* no other rational person would have reached the same conclusion on the record presented.[3]

Further, the court correctly concluded the officers did not show a sufficient, particularized and objective basis for suspecting defendant of presently engaging in criminal activity. *State v. Larson,* 93 Wn.2d 638, 611 P.2d 771 (1980). In *Larson,* the court suppressed evidence obtained from a passenger in a car. The reasons cited by the officers for detaining the passenger were that the vehicle was (1) parked beside a closed park; (2) late at night; (3) in an area which was known to have a high burglary rate; (4) across from an apartment which had recently been burglarized; and (5) began moving away from the officers when they approached it. The court concluded even though the circumstances looked suspicious, there were no objective facts which could reasonably lead the officers to conclude the passenger was engaged in criminal activity.[4] This decision relied upon *Brown v. Texas,* 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979), where it was held stopping one of two people, who walked away from each other when police offi-

---

[3]The State argues the court's failure to adopt its proposed findings contradicts its oral opinion. Although statements made in the court's oral decision may be used to interpret ambiguous findings, they have no binding effect unless incorporated in the formal findings, conclusions of law and judgment. *In re Marriage of McKinney,* 14 Wn. App. 921, 923–24, 546 P.2d 456 (1976). We find no ambiguity in the court's findings.

[4]*But see State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974), where, based on similar facts, the court concluded the officers' actions were justified. Although *Larson* did not overrule *Gluck,* we deem *Larson* to be controlling. *See State v. Stroud, supra* at 395 n.2. *See also State v. Thompson,* 93 Wn.2d 838, 613 P.2d 525 (1980).

cers approached, violated the Fourth Amendment even though the area had a high incidence of drug traffic. The Court concluded the evidence was as consistent with innocent as criminal activity and, therefore, the officers lacked a reasonable suspicion to believe they were engaged in criminal conduct.

■ Here, the decision to stop and question defendant was made because the officers thought he moved while in a parked vehicle, late at night, in a high crime area. Yet, the court's findings reflect there was no evidence the area had ever been subjected to vehicle prowling, or defendant attempted to evade the officers. As noted in *Larson,* at 645, "many members of our society live, [and] work . . . in high crime areas . . . That does not automatically make those individuals proper subjects for criminal investigation." Neither does the fact that an individual has a criminal record necessarily lead to the conclusion he is presently engaging in a crime.

> If a prior conviction, not to mention a prior arrest, should afford grounds for believing that an individual is engaging in criminal activity at any given time thereafter, that person would never be free of harassment, no matter how completely he had reformed. To the best of our knowledge, the law does not countenance such an assumption.

(Footnote omitted.) *State v. Hobart, supra* at 446–47. Defendant's actions here were as consistent with innocent as criminal activity. Indeed, Officer Ruetsch himself testified the circumstances were consistent with defendant being asleep. While we are generally reluctant to curtail good faith investigation by police officers, on the facts found by the trial court and in view of *State v. Larson, supra,* we must conclude the intrusion here was unreasonable. The gun, being the fruit of the intrusion, was, therefore, properly suppressed. *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

Affirmed.

McInturff, C.J., and Roe, J., concur.

Reconsideration denied August 20, 1982.

Review denied by Supreme Court November 22, 1982.