[No. 5775-5-III.   Division Three.   July 3, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL KENNEDY, *Appellant.*

*James L. Nagle* and *Makus & Makus,* for appellant (appointed counsel for appeal).

*Arthur R. Eggers, Prosecuting Attorney,* and *Donald W. Schacht, Deputy,* for respondent.

MUNSON, C.J.—Michael Kennedy appeals his conviction for unlawful possession of marijuana.[1] He contends: (1) the evidence of marijuana and his statement to the police officer should have been suppressed as the fruit of an unlawful investigative stop; (2) the challenged evidence should have been suppressed as derived from a warrantless search which could not be justified under the plain view doctrine; and (3) his statement regarding where he purchased the marijuana was subject to exclusion because the officer's question exceeded the permissible scope of the investigative stop. We affirm.

At approximately 2:30 p.m. on September 17, 1982, Officer Leonard Adams investigated a complaint received that day by the Walla Walla police department about possible

---

[1]Judgment and sentence were entered following Mr. Kennedy's waiver of a jury trial and stipulation to facts sufficient for a finding of guilt.

drug activity at a local residence. Neighbors had complained about heavy pedestrian traffic in and out of the house, and that the individuals involved stayed only for brief periods of time. Information available to Officer Adams indicated Rob Smith and his family resided at that address. Officer Adams had information from a police informant that Mr. Kennedy was purchasing marijuana on a regular basis at the Smith residence. The informant had been providing him with drug related information since May or June of 1982. The informant had further advised Officer Adams that Mr. Kennedy did not make a habit of socializing with the Smiths, but visited the residence for the sole purpose of purchasing drugs. Additionally, the informant stated Mr. Kennedy would normally drive a light green pickup truck or Sue Sison's maroon Oldsmobile.

Upon driving past the Smith residence, Officer Adams observed a red or maroon Oldsmobile with Idaho license plates parked in front of the house. He also noticed a woman, whom he did not recognize, seated on the passenger side of the vehicle. Officer Adams parked at a vantage point where he could observe the residence and the Oldsmobile. A few minutes later, he saw Mr. Kennedy leave the Smith residence and enter the parked Oldsmobile. Mr. Kennedy and his female passenger then drove away.

Officer Adams recognized Mr. Kennedy, having known him since 1969 or 1970, and believed he did not reside at that address. Officer Adams was also aware the owner/operator of the Oldsmobile was Sue Sison, Mr. Kennedy's girl friend.

Shortly after Mr. Kennedy and his female companion left the residence, Officer Adams proceeded to stop the Oldsmobile. There had been no traffic violation; the sole reason for the stop was Officer Adams' suspicion Mr. Kennedy had just completed a drug transaction.

As Officer Adams approached the Oldsmobile, he observed Mr. Kennedy leaning forward in the seat. It was his impression Mr. Kennedy was depositing something under the front seat. Officer Adams asked Mr. Kennedy to

step out of the vehicle. Mr. Kennedy complied and moved to the rear of the vehicle.

While the driver's door remained open, Officer Adams looked into the vehicle and recognized the woman passenger as Ms. Sison. At the same time, Officer Adams observed the top portion of a plastic baggie protruding from underneath the driver's seat. This was the same general vicinity where he had seen Mr. Kennedy lean forward. The contents of the baggie were not within Officer Adams' view but he recognized the baggie as a common container for marijuana.

Officer Adams then reached into the vehicle and retrieved the baggie which appeared to contain marijuana. He asked Mr. Kennedy where he had obtained the marijuana; Mr. Kennedy stated he had purchased it shortly before at the Smith residence. Officer Adams released Mr. Kennedy and Ms. Sison without taking them into custody. The entire investigative stop occurred within a period of 5 or 6 minutes.

Mr. Kennedy was later charged with unlawful possession of marijuana. He moved to suppress the marijuana seized from the Oldsmobile. At the hearing on the motion, Officer Adams testified (a) he had been with the Walla Walla police department 21 years, including 11 years in the detective division; (b) he had been involved in over one hundred drug related investigations over the past 5 years; (c) his previous experience indicated plastic baggies are common receptacles for marijuana; and (d) heavy pedestrian traffic as described by Mr. Smith's neighbors was indicative of drug traffic. When questioned as to the reliability of the police informant who advised him of Mr. Kennedy's previous drug purchases, Officer Adams stated the information supplied by the informant had resulted in the issuance of a search warrant on at least one previous occasion. When the warrant was executed, drugs were discovered at the location described therein.

Officer Adams also stated the information with respect to Mr. Kennedy's activities had apparently been derived from personal conversations the informant had had with Mr.

Kennedy. Officer Adams did not indicate how recent the information was with respect to Mr. Kennedy. However, he did state he had not anticipated seeing Mr. Kennedy at the Smith residence when he was investigating the neighbors' complaints. The trial court denied the motion to suppress. Following entry of findings of fact, conclusions of law, and judgment and sentence, Mr. Kennedy appealed.

 Mr. Kennedy initially contends the challenged evidence should have been suppressed as the fruit of an unlawful investigative stop. The fourth amendment to the United States Constitution and article 1, section 7, of the Washington State Constitution require all seizures to be reasonable. Whether a particular seizure is reasonable depends upon a balancing of the public interest in law enforcement against the severity of the interference with the individual's liberty and privacy. *Brown v. Texas,* 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979); *State v. Hobart,* 94 Wn.2d 437, 442–43, 617 P.2d 429 (1980); *State v. Tocki,* 32 Wn. App. 457, 461, 648 P.2d 99, *review denied,* 98 Wn.2d 1004 (1982); *State v. Stroud,* 30 Wn. App. 392, 397, 634 P.2d 316 (1981), *review denied,* 96 Wn.2d 1025 (1982).

Applying this criterion, it is generally acknowledged that under some circumstances a person may be detained briefly for questioning, even though probable cause for arrest may be absent; such a detention must be supported by a reasonable suspicion, based upon objective facts, that the individual accosted is engaged in criminal conduct. *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *State v. White,* 97 Wn.2d 92, 105, 640 P.2d 1061 (1982); *State v. Gluck,* 83 Wn.2d 424, 426, 518 P.2d 703 (1974); *State v. Tocki, supra* at 460. In effect, an assessment of the circumstances in existence immediately prior to the detention must yield a particularized suspicion of wrongdoing. *United States v. Cortez,* 449 U.S. 411, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981); *State v. Larson,* 93 Wn.2d 638, 644, 611 P.2d 771 (1980).

The requisite factual basis for the detention is not lim-

ited to the police officer's personal observations, but may include information supplied by another if it has some indicia of reliability, not necessarily amounting to probable cause. *Adams v. Williams*, 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972); *State v. Lesnick*, 10 Wn. App. 281, 283, 518 P.2d 199 (1973), *aff'd*, 84 Wn.2d 940, 530 P.2d 243, *cert. denied*, 423 U.S. 891, 46 L. Ed. 2d 122, 96 S. Ct. 187 (1975). When the informant's tip incorporates detailed predictive information about a suspect's movements which, upon corroboration, demonstrates the informant was privy to the suspect's activities, an inference that the information is reliable is fully justified. *Draper v. United States*, 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329 (1959); *State v. Friederick*, 34 Wn. App. 537, 542, 663 P.2d 122 (1983); *State v. Sykes*, 27 Wn. App. 111, 115–16, 615 P.2d 1345 (1980); *State v. Lesnick, supra* at 285.

In the present case, there can be no doubt a seizure occurred. The stopping of an automobile and the detention of its occupants, however brief, constitutes a seizure which must be reasonable under the circumstances. *State v. Larson, supra* at 641. Therefore, the determinative issue is whether the investigative stop was premised upon a reasonable suspicion the occupants of the Oldsmobile were engaged in criminal activity. In the absence of such suspicion, the evidence obtained during the stop would be subject to exclusion. *See Davis v. Mississippi*, 394 U.S. 721, 22 L. Ed. 2d 676, 89 S. Ct. 1394 (1969); *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

In determining whether a well founded suspicion existed, the circumstances must be considered in their totality. *United States v. Cortez, supra; State v. Tocki, supra* at 461. Moreover, the special experience or knowledge of the police officer involved may be taken into account. *Brown v. Texas, supra; State v. Cottrell*, 86 Wn.2d 130, 132, 542 P.2d 771 (1975).

When the facts are considered as a whole, it was reasonable for Officer Adams to conclude Mr. Kennedy had just completed a drug transaction. Both the neighbors' com-

plaints and the officer's personal observations, when coupled with his previous knowledge and experience, corroborated the information supplied by the informant. That information possessed the necessary indicia of reliability to justify a reasonable suspicion Mr. Kennedy was engaged in wrongdoing. *Adams v. Williams, supra.*

■ Officer Adams' asking Mr. Kennedy to step out of the vehicle did not transform an otherwise valid stop into an unlawful seizure. Mr. Kennedy's liberty and privacy would have been restricted whether he stayed inside or stepped outside the vehicle. This additional intrusion can only be described as de minimis. *Pennsylvania v. Mimms,* 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330 (1977); *State v. Sykes, supra* at 116. Therefore, the investigative stop of the Oldsmobile and its occupants was lawful.

Mr. Kennedy next contends the warrantless search of the Oldsmobile, which resulted in the seizure of the marijuana, could not be justified under the plain view doctrine. Since we conclude the elements of plain view were satisfied in this case, we need not address Mr. Kennedy's further contention the search could not be justified on the basis of probable cause supported by exigent circumstances. *See generally State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983).

In order for the plain view doctrine to apply, the following requirements must be met: (1) prior justification for the intrusion; (2) an inadvertent discovery of contraband or incriminating evidence; and (3) immediate knowledge by the officer that he has evidence before him. *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971); *State v. Lair,* 95 Wn.2d 706, 714, 630 P.2d 427 (1981).

■ The first requirement was met; the investigative stop was lawful as previously discussed. The discovery of the plastic baggie was inadvertent; Officer Adams did not take any unreasonable steps from outside the vehicle to discover the contraband. *See State v. Callahan,* 31 Wn. App. 710, 712–13, 644 P.2d 735 (1982). The fact he believed Mr.

Kennedy had placed something underneath the seat of the car does not preclude the application of the plain view doctrine. *State v. Henry*, 36 Wn. App. 530, 532–33, 676 P.2d 521 (1984).

The remaining requirement that the discovered object be immediately recognized as contraband was also satisfied. Although the contents of the baggie were not within view, Officer Adams had probable cause to believe marijuana was contained therein. *See United States v. Wheeler*, 459 F.2d 1228, 1229 (D.C. Cir. 1972); *State v. Palmer*, 5 Wn. App. 405, 410–11, 487 P.2d 627, *review denied*, 79 Wn.2d 1012 (1971). *See also State v. Ball*, 124 N.H. 226, 471 A.2d 347 (1983); *State v. Chrisman*, 100 Wn.2d 814, 676 P.2d 419 (1984).[2] In light of the existing

---

[2]In *Ball*, the New Hampshire Supreme Court held that a warrantless seizure of a hand–rolled cigarette in an automobile ashtray could not be justified under the plain view rule, since the incriminating nature of the evidence was not immediately apparent prior to the seizure. In so holding, the court stated in 124 N.H. at 236:

[W]e note that not all hand–rolled cigarettes contain contraband. Consequently, we cannot say that observation of a hand–rolled cigarette, by itself, would lead a reasonable and prudent person to believe that the cigarette contained an illegal substance. To transform mere suspicion about the contents of the hand–rolled cigarette into a reasonable belief based on probable cause, the officer must articulate additional corroborating facts. For instance, it might be shown that the arresting officer had the ability to distinguish hand–rolled marijuana and tobacco cigarettes by sight, or that he perceived the odor of marijuana, or that the defendant made a furtive gesture in an attempt to conceal the cigarette, or that the defendant's conduct was otherwise incriminating.

The record before us provides no evidence of such corroborating circumstances. . . .

The record fails to show that the troopers had special expertise in identifying cigarettes containing illicit substances. On the contrary, the record states that Trooper–trainee Hamilton was unable to identify the cigarette, by sight, and that Trooper Hunter could not tell the difference between a hand–rolled tobacco cigarette and any other hand–rolled cigarette. It appears that the sole justification for the troopers' belief that the cigarette contained marijuana was that it was hand–rolled and pinched at the end.

In contrast to *Ball*, the present record contains corroborating evidence beyond the mere existence of a plastic baggie. First, Officer Adams had a justifiable suspicion at the time of the stop that Mr. Kennedy had just completed a drug transaction. Second, he observed Mr. Kennedy lean forward shortly after the stop and apparently place something under the front seat. The location of the baggie was in

circumstances, including Officer Adams' previous knowledge and experience, the retrieval of the baggie was fully justified under the plain view rule. Hence, the seizure of the marijuana was reasonable and not dependent upon the presence of exigent circumstances. *Coolidge v. New Hampshire, supra; State v. Lair, supra* at 716; *State v. Johnson,* 17 Wn. App. 153, 159, 561 P.2d 701, *review denied,* 89 Wn.2d 1001 (1977); *see also State v. Chrisman, supra.*[3]

Mr. Kennedy finally contends his statement regarding where he purchased the marijuana should have been suppressed because the officer's question exceeded the permissible scope of the investigative stop.

This issue is raised for the first time on appeal. Nothing in the record suggests the admissibility of Mr. Kennedy's statement was at issue during the suppression hearing. The trial court's findings, conclusions, and order denying the motion to suppress are likewise limited to the admissibility of the marijuana seized from the Oldsmobile. More importantly, the record indicates the finding of guilt was premised solely upon the evidence of the marijuana; Mr. Kennedy in stipulating to facts sufficient for a finding of guilt made no reference to his statement to Officer Adams. Therefore, the merits of the issue need not be addressed.

---

the same general vicinity where he had previously leaned forward. Third, Officer Adams had special expertise in drug related crimes. He had been involved in over one hundred drug related investigations over the past 5 years. Furthermore, he was aware that plastic baggies are common receptacles for marijuana. There were sufficient objective, articulable facts providing the necessary probable cause to justify Officer Adams' seizure of the baggie. Unlike the facts in *Chrisman*, it was immediately apparent to Officer Adams he had evidence before him prior to any intrusion into the vehicle.

[3]The facts in *Chrisman* presuppose the elements of plain view were not satisfied until the campus police officer crossed the threshold of the dormitory room. *See State v. Chrisman, supra* at 816, 819. Had the items been immediately identified as contraband before the officer entered the room, the subsequent seizure of the items might have been proper. The presence of exigent circumstances is only considered in determining whether the first element of plain view is satisfied. *See State v. Chrisman, supra* at 819.

The conviction is affirmed.

GREEN and THOMPSON, JJ., concur.

Review granted by Supreme Court October 5, 1984.