[No. 6216–3–III.   Division Three.   September 23, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. SCOTT ALLEN MERCER, *Appellant*.

770

*Richard W. Sanger* and *Sanger & Bartoletta,* for appellant (appointed counsel for appeal).

*Donald C. Brockett, Prosecuting Attorney,* and *Patricia A. Thompson, Deputy,* for respondent.

MUNSON, J.—Scott Allen Mercer appeals his conviction for unlawful possession of marijuana in excess of 40 grams. He contends: (1) the marijuana seized from his car and his statements to police should have been suppressed as the fruit of an unlawful investigative stop; (2) the same evidence was excludable for lack of *Miranda* warnings; and (3) the search of his car was invalid under *State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983). We affirm.

At approximately 3:30 a.m. on May 28, 1983 (7 months prior to *Ringer*), Trooper Joe Kimball of the Washington State Patrol was driving past Westview Elementary School in Spokane when he observed a single car in the school parking lot. The dome light in the car was flashing on and off. Trooper Kimball believed something was wrong and decided to investigate. As he entered the parking lot in his marked patrol vehicle, an individual exited the passenger side of the parked car and ran toward the school. Scott Allen Mercer and Nelson Oberst also exited the car, but did not attempt to flee; they met Trooper Kimball at the rear of their vehicle.

Trooper Kimball asked the two young men for identification, which they supplied. He also asked them what they were doing, and why the third individual had run. They stated he fled because he wanted them to smoke marijuana. During this same time, Trooper Kimball noticed six chrome mag wheels of mixed sizes in the rear of the car, and a water pipe on the ground within throwing distance of the passenger side of the car.

Both men denied it was their pipe; Trooper Kimball had them dispose of it in the school dumpster. The mag wheels were in plain sight; the car had a hatchback and the back-seat was folded down. Mr. Mercer stated he purchased the wheels; two of them came from Mr. Oberst's shed. Mr. Oberst lived across the street from the school.

Trooper Kimball also noticed a rolled up brown paper bag on the front seat floor of the car on the driver's side; the bag was partially visible from Trooper Kimball's vantage point outside the car. Mr. Mercer refused Trooper Kimball's request to look inside the bag; the matter was not pursued.

Because his suspicions had not been dispelled, 5 or 10 minutes after he arrived on the scene Trooper Kimball radioed the city police for assistance. He did not feel competent to continue the investigation because his duties were basically traffic oriented. A warrant check was made which indicated there were no outstanding warrants on the two

men. He did not converse further with the men, but had them stand in front of his patrol vehicle headlights.

At approximately 3:52 a.m., Officer James D. Earle of the Spokane Police Department received the radio call and arrived at the school lot about 4 a.m. After conferring with Trooper Kimball, Officer Earle proceeded to question Mr. Mercer and Mr. Oberst. During this time, Officer Earle noticed orange inventory control markings on the mag wheels, and the wheels appeared to be different sizes. He asked the two where they had gotten the wheels. Mr. Mercer stated Mr. Oberst had given him two of the wheels and the other four he purchased from an individual that evening.

Because Mr. Mercer did not have a receipt for the wheels, Officer Earle placed a radio call to verify Mr. Mercer's statement. The two men would have been released if the statement had been verified. The radio response, overheard by Mr. Mercer and Mr. Oberst, indicated the individual knew both men but had not sold them any wheels. Officer Earle then advised the two of their *Miranda* rights from a standard rights card. Mr. Mercer signed an acknowledgement and waiver of those rights at approximately 4:20 a.m.

Officer Earle separated the two men; Mr. Oberst was placed in Officer Earle's patrol vehicle while Mr. Mercer was questioned. When asked where he got the wheels, Mr. Mercer admitted he stole them from Poor Boys Tire Store on North Monroe Street. He was then placed in Trooper Kimball's patrol car.

After Mr. Oberst was readvised of his rights and signed a rights card waiving his rights, he confirmed Mr. Mercer's story; the two men were then placed under arrest for third degree theft.

Mr. Mercer was removed from Trooper Kimball's vehicle and searched. A hash pipe and a plastic bag, with a few flakes of marijuana inside, were found on Mr. Mercer. The bag was returned to him, and he was again placed in the patrol vehicle. Officer Earle then conducted a search of Mr.

Mercer's car; he discovered a plastic bag inside the paper bag underneath the front seat. The contents of the baggie appeared to be marijuana; a subsequent laboratory analysis confirmed this and that the amount was 75 grams. Mr. Mercer was advised he was under arrest for felony possession of marijuana and was taken to the Spokane City/County Jail. Mr. Oberst was released to his mother. Mr. Mercer was subsequently charged by information with possession of marijuana in excess of 40 grams, RCW 69.50-.401(d).

Prior to trial, Mr. Mercer moved to suppress the evidence seized during the investigative stop and his statements to the officers. His principal contentions were the investigative detention was not supported by a well founded suspicion of criminal activity; even assuming it was, he was in custody for purposes of *Miranda* from the moment Trooper Kimball radioed for assistance. Therefore, the evidence and his statements were subject to exclusion as the fruits of either an unlawful detention or a violation of *Miranda*; Officer Earle's subsequent *Miranda* admonitions did not remove the taint.

Mr. Mercer's motions were denied. Following the CrR 3.5 hearing, he stipulated to certain evidence which served as the basis for a finding of guilt. After Mr. Mercer was advised of his right to a jury trial and waived that right, the court found him guilty as charged. This appeal followed.

Initially, Mr. Mercer contends the marijuana seized from his car and his statements to police should have been suppressed as the fruit of an unlawful investigative stop. The fourth amendment to the United States Constitution and article 1, section 7 of our constitution require all seizures to be reasonable. Whether a particular seizure is reasonable depends upon a balancing of the public interest in law enforcement against the severity of the intrusion upon the individual's liberty and privacy interests. *Brown v. Texas,* 443 U.S. 47, 50–51, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979); *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975); *State v. Hobart,* 94

Wn.2d 437, 442–43, 617 P.2d 429 (1980); *State v. Samsel,* 39 Wn. App. 564, 570, 694 P.2d 670 (1985); *State v. Tocki,* 32 Wn. App. 457, 461, 648 P.2d 99, *review denied,* 98 Wn.2d 1004 (1982).

Under some circumstances, a person may be detained briefly for questioning, even though probable cause for arrest may be absent; such detention need only be supported by a well founded suspicion of criminal activity based upon specific and articulable facts. *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *State v. White,* 97 Wn.2d 92, 105, 640 P.2d 1061 (1982); *State v. Gluck,* 83 Wn.2d 424, 426, 518 P.2d 703 (1974). The officer's experience will be taken into account in assessing whether a suspicion of wrongdoing was justified under the circumstances. *State v. Samsel, supra* at 570–71; *State v. Selvidge,* 30 Wn. App. 406, 409–10, 635 P.2d 736 (1981), *review denied,* 97 Wn.2d 1002 (1982). Although the circumstances must be more consistent with criminal than innocent conduct, "reasonableness is measured not by exactitudes, but by probabilities." *State v. Samsel, supra* at 571.

Here, a seizure occurred. The stopping of a person, however brief, constitutes a seizure which must be reasonable under the circumstances.[1] *State v. White, supra* at 105. Therefore, the initial question is whether the investigative stop was premised upon a reasonable suspicion Mr. Mercer and his two companions were engaged in actual or potential criminal activity. In the absence of such suspicion, the evidence obtained during the stop would be subject to exclu-

---

[1] Arguably, no seizure occurred at the time Trooper Kimball initially requested identification from Mr. Mercer. Not every encounter with police rises to the stature of a seizure. *State v. Belanger,* 36 Wn. App. 818, 820–21, 677 P.2d 781 (1984); *State v. Montgomery,* 31 Wn. App. 745, 751, 644 P.2d 747 (1982). Mr. Mercer testified during the CrR 3.5 hearing that he and Mr. Oberst met Trooper Kimball at the patrol vehicle when Trooper Kimball arrived. This testimony suggests the two men initially consented to the conversation with the trooper. Nevertheless, a seizure had occurred at least by the time Trooper Kimball radioed for assistance and required the men to stand in front of the headlights of his patrol car. They were obviously not free to leave at this time. For sake of analysis, it will be assumed the stop occurred when Trooper Kimball first asked for identification.

sion. *Davis v. Mississippi,* 394 U.S. 721, 22 L. Ed. 2d 676, 89 S. Ct. 1394 (1969); *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *State v. Tocki, supra.*

When the facts here are considered as a whole, it was reasonable for Trooper Kimball to conclude Mr. Mercer and his companions were engaged in criminal activity; the facts in existence immediately prior to the stop do not comport with innocent activity.

Trooper Kimball's inability to articulate the exact crime being committed did not make his suspicion a mere hunch. Such exactitude is only pertinent in determining probable cause to arrest. The courts have repeatedly encouraged law enforcement officers to investigate suspicious situations. *See State v. White, supra* at 105–06; *State v. Larson,* 93 Wn.2d 638, 645, 611 P.2d 771 (1980); *State v. Stroud,* 30 Wn. App. 392, 399, 634 P.2d 316 (1981), *review denied,* 96 Wn.2d 1025 (1982). "Merely because a police officer lacks probable cause to arrest an individual, he need not shrug his shoulders and allow suspected criminal activity to continue or to escape his further scrutiny." *State v. Young,* 28 Wn. App. 412, 421, 624 P.2d 725, *review denied,* 95 Wn.2d 1024 (1981).

The issue remains whether the scope of the investigative stop exceeded the bounds of reasonableness. Mr. Mercer argues he was detained for an inordinate amount of time and should have been released at the time Trooper Kimball called for assistance.

▪ The scope of an investigative stop, without probable cause to arrest, must be limited to the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *Florida v. Royer,* 460 U.S. 491, 500, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983); *State v. Johnston,* 38 Wn. App. 793, 798–99, 690 P.2d 591 (1984). However, if the results of the initial investigation do not dispel the officer's suspicion of criminal activity, he may further detain the suspect and continue his investigation by doing what is reasonably necessary under the circum-

stances. *State v. Walker,* 24 Wn. App. 823, 828, 604 P.2d 514 (1979), *review denied,* 93 Wn.2d 1017 (1980); *State v. Serrano,* 14 Wn. App. 462, 466, 544 P.2d 101 (1975); *State v. Watson,* 165 Conn. 577, 345 A.2d 532, 537 (1973), *cert. denied,* 416 U.S. 960, 40 L. Ed. 2d 311, 94 S. Ct. 1977 (1974). *See also* 3 W. LaFave, *Search and Seizure* § 9.2, at 36–39 (1978).

Recently, in *State v. Williams,* 102 Wn.2d 733, 740, 689 P.2d 1065 (1984), the court stated the relevant factors to be considered in determining whether an intrusion on the suspect's liberty exceeded the permissible scope of an otherwise valid stop: "the purpose of the stop, the amount of physical intrusion upon the suspect's liberty, and the length of time the suspect is detained." *See generally.* Washington Survey, *Terry Stop or Arrest? The Washington Court Attempts a Distinction—State v. Williams, 102 Wn.2d 733, 689 P.2d 1065 (1984),* 60 Wash. L. Rev. 523 (1985). Applying these criteria to the present case, the investigative stop was conducted in a reasonable manner.

All questioning was directly linked to dispelling or confirming Trooper Kimball's suspicion of criminal activity. Likewise, the physical intrusion upon the suspects' liberty was minimal. The questioning took place on the scene in an open area; the men were only required to stand in front of the patrol vehicle headlights while Trooper Kimball waited for assistance. Trooper Kimball testified he was merely attempting to keep the suspects in sight. He refrained from questioning the men further during the approximate 20–minute wait. Further, the men were not separated and placed in the patrol vehicles until the officers determined the wheels had not been purchased. At that point, there was probable cause to arrest.

The length of time was also not excessive. There is no indication the suspects were held longer than reasonably necessary. Shortly after Trooper Kimball arrived, he radioed for assistance because he was uncertain how he should proceed. Responses to his questions and his observations indicated a strong possibility of marijuana use by

the suspects. Given his limited experience in drug related matters, it was reasonable for Trooper Kimball to maintain the status quo while waiting for assistance.

In addition, there is no indication Officer Earle took an inordinate amount of time in arriving at the scene. Because he was not acquainted with the facts, it was also reasonable for the two officers to confer for 3 or 4 minutes.

Finally, there is nothing to suggest Officer Earle's questioning or verification of the suspect's statements was unreasonable. After the radio response, the officers had probable cause to arrest. In short, the intrusion upon Mr. Mercer's liberty was minimal and entirely reasonable under the circumstances.

Mr. Mercer next contends that police questioning during the investigative stop constituted a violation of his rights under the fifth amendment to the United States Constitution and article 1, section 9 of our constitution. We disagree.

Contrary to Mr. Mercer's assertion, *Miranda* warnings are not normally required in the context of an investigative stop since such questioning is not perceived as accusatory or custodial. *State v. Coahran,* 27 Wn. App. 664, 667, 620 P.2d 116 (1980). Such warnings only become necessary when, as a result of the investigation, sufficient information is obtained so that the officer has probable cause to arrest. *State v. Dictado,* 102 Wn.2d 277, 291, 687 P.2d 172 (1984); *State v. Lewis,* 32 Wn. App. 13, 18, 645 P.2d 722, *review denied,* 98 Wn.2d 1004 (1982); *State v. Coahran, supra* at 667; *State v. Galloway,* 14 Wn. App. 200, 202, 540 P.2d 444, *review denied,* 86 Wn.2d 1006 (1975). *See also* W. LaFave, at 36 n.66.

Probable cause arose here when the officers determined the wheels had not been purchased. Mr. Mercer was advised of his rights at this time and waived them. The fact he was not free to leave during the initial stop did not make the situation custodial for purposes of *Miranda.*

Mr. Mercer's reliance upon *State v. Byers,* 88 Wn.2d 1, 6, 559 P.2d 1334 (1977) is misplaced. In *State v. Williams,*

*supra* at 741 n.5, the court specifically stated: *Byers* "blurs the distinction between an arrest and a *Terry* stop" and is overruled to that extent. *See also State v. Quaring,* 32 Wn. App. 728, 730, 649 P.2d 173 (1982); *State v. Wakeley,* 29 Wn. App. 238, 240, 628 P.2d 835, *review denied,* 95 Wn.2d 1032 (1981); *State v. Gardner,* 28 Wn. App. 721, 725, 626 P.2d 56, *review denied,* 95 Wn.2d 1027 (1981). Although Mr. Mercer cites both the fifth amendment to the United States Constitution and article 1, section 9 of our constitution, he has not indicated how the state constitution would afford greater protection under the facts of this case. Mr. Mercer's will was not overborne; he spoke freely and voluntarily to the officers.

Finally, Mr. Mercer contends the marijuana seized during the warrantless search of his car should have been suppressed. He argues the search violated article 1, section 7 of our constitution. We disagree.

In *State v. Ringer,* 100 Wn.2d 686, 699, 674 P.2d 1240 (1983), the court held a warrantless search of an automobile cannot be justified under the state constitution as a search incident to an arrest unless the area to be searched is within the arrestee's immediate control, and the search is required to remove weapons or to avoid destruction of evidence of the crime for which the suspect was taken into custody. *See also State v. Michaels,* 60 Wn.2d 638, 643, 374 P.2d 989 (1962). *Ringer* rejected *New York v. Belton,* 453 U.S. 454, 460, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), which held a search of the passenger compartment of a car, and any containers found therein, is valid under the Fourth Amendment as a search incident to a lawful arrest of the occupant of that vehicle.

*Ringer* has been overruled in part by *State v. Stroud,* 106 Wn.2d 144, 150–52, 720 P.2d 436 (1986). The search comported with the ruling in *Stroud.* Immediately after the arrest, officers may search the vehicle interior for weapons, contraband, or destructible evidence, so long as they do not seek to enter a locked container or a locked glove compartment without a search warrant. Applying that rule here, the

search was proper.

The conviction is affirmed.

GREEN, C.J., and McINTURFF, J., concur.