**Milton Eldo SMITH, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 16020.**

United States Court of Appeals
Eighth Circuit.

March 4, 1959.

Irvine E. Ungerman, Tulsa, Okl. (Manuel Grabel, Maynard I. Ungerman, William Leiter and R. James Unruh, Tulsa, Okl., on the brief), for appellant.

O. J. Taylor, Asst. U. S. Atty., Kansas City, Mo. (Edward L. Scheufler, U. S. Atty., Kansas City, Mo., on the brief), for appellee.

Before JOHNSEN, VAN OOSTER-HOUT and MATTHES, Circuit Judges.

JOHNSEN, Circuit Judge.

Appellant was convicted, on a jury-waived trial, of having unlawfully attempted to transport intoxicating liquor into the "dry" State of Oklahoma, in violation of 18 U.S.C. § 1262. He was given a prison sentence of four months and a fine of $250.

His appeal presents the single question of whether the trial court erred in holding the search and seizure made against him to be legal, and in overruling on this basis his motion to suppress the evidence obtained thereby.

The search and seizure involved occurred on November 6, 1957, about 4 p. m., at a bridge, on a highway in Missouri, a few miles east of the Oklahoma border. Agents of the Alcohol Tax Unit had set up a road-block for appellant's car at this point and had thus caused him to stop. Thereafter, without a warrant, they opened up the trunk of his automobile and removed from it 26 cases of liquor.

The road-block had been set up hastily, after receipt of a radio communication from other Alcohol Tax Unit agents, giving a description of the car and advising of its visit to and departure from the Ozark Tobacco and Liquor Store, located some four miles from the bridge, just outside the town of Noel, Missouri.

The Liquor Store had on that day been kept under surveillance by two alcohol-tax agents—making observation of its rear with binoculars—because of the reputation which the place had come to have of being a supplier of liquor to "Oklahoma haulers".

The store building had an attached garage in the back, with doors in its opposite walls, so that a car could enter or exit on either side. About 3:20 p. m., the watching agents saw a Lincoln car circle the Liquor Store and drive into the back yard. As it was approaching the garage, someone swung the doors open from the inside, and then closed them again, after the car had entered. A half hour later, the doors were re-opened and the Lincoln car came out. It proceeded northward from the store toward the highway that runs into Oklahoma.

The watching agents radioed these facts to another agent, who was stationed in an Alcohol Tax Unit car a short distance ahead and off the road which appellant's car was traveling. As appellant passed the agent's hidden position, the latter drove out onto the road and began to follow the Lincoln car. He observed that the car seemed to be heavily weighted, and further that, although the body of the car was dirty, it was carrying a clean Missouri license plate.

After appellant arrived at the east-west highway and turned onto it in the direction of Oklahoma, the tailing agent radioed ahead to the two agents who set up the road-block. He also switched on his red light and his siren and speeded up behind appellant's car, until it stopped at the road-block. He then went over to the side of appellant's car and asked to see the latter's driver's license. Appellant, with knowledge that the men were Alcohol Tax Unit agents, handed him the license, which showed that appellant was an Oklahoma resident.

The agent then looked over the car exteriorly, to see whether it was equipped with overload springs; found this to be the fact; noted that these were distinctly compressed; and thus confirmed his observation as to a heavy load being contained in the car. He undertook, however, to make further verification of this fact, by testing the give or play of the bumper in relation to the springs, and was unable to obtain any reaction. A glance through the windows had shown the inside of the car to contain nothing, except a spare tire lying on the front seat, so that the weight on the springs manifestly was coming from the trunk of the car.

The agent had called out the word "overload" upon his examination of the springs, and one of the other agents, who had meanwhile asked appellant for the key to the trunk, thereupon unlocked the back end of the car and found the 26 cases of whiskey, which the agents seized.

Was the court entitled to hold that probable cause existed for the Alcohol Tax Unit agents to make the search and seizure in which they engaged?

■ The answer to the question turns on whether the elements of information or knowledge which the agents had at the time they opened up the trunk of appellant's car and caused the liquor to be exposed were such as would justify a man of reasonable caution in believing that the car contained liquor and that this was being attempted to be transported into Oklahoma. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543; Lawson v. United States, 8 Cir., 254 F.2d 706, 708.

■ Recognizedly, probable cause, as a basis for search and seizure, must consist of something more than "bare suspicion". Such elements of information or knowledge must underlie it as are capable, on their tangible and intangible values, of producing natural belief or persuasion, within the realities and prudence of general judgment in the field involved. But these elements are not required to be of such form and basis as would be necessary to give them competency as legal evidence. Brinegar v. United States, 338 U.S. 160, 174–175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879; Husty v. United States, 282 U.S. 694, 700–701, 51 S.Ct. 240, 75 L.Ed. 629.

■ Further, as above suggested, the sufficiency of information or knowledge to constitute probable cause is entitled to be tested as of the time that the officer actually makes search of the car, and

not merely by what he knew at the time that he engaged in stopping it. Cf. Gilliam v. United States, 6 Cir., 189 F.2d 321, 322. Or as expressed by Judge Gardner in the Lawson case, supra, 254 F.2d at page 708, "The propriety of the seizure of property without a search warrant is dependent upon the facts and circumstances existing at and prior to the time of seizure and known to the seizing officers".

■ There must, of course, exist a ground and basis for a federal officer to engage in stopping a car on a highway. Alcohol Tax Unit agents are not free to make general or capricious interceptions of motorists. Elements must be present, of which the agents have information or knowledge, connected with the car itself, or with the driver, or with the context given the car and driver by some special scene or setting, which can reasonably impress, beyond a mere suspicion, that the motorist is not "going about ordinary affairs" but is presumably engaged in using the car for improper alcohol-purpose. Brinegar v. United States, supra, 338 U.S. at page 177, 69 S.Ct. at page 1311.

■■ Where the situation involved is one of such seeming probability, an Alcohol Tax Unit agent is warranted in stopping a car, with indication of his official status, for the purpose of inquiring of the driver as to his identity or making observation of the vehicle. Probable cause may perhaps not at that time exist for searching the interior of the car, but if there is a warranting basis for stopping the vehicle, such information as the agent acquires in incidence, from proper acts of conversation or observation, is legally entitled to be taken into account in testing the probable cause which can be regarded as existing as to a subsequent search in which the agent may engage. Cf. Fowler v. United States, 10 Cir., 239 F.2d 93, 96.

■ We think that there existed in the present situation such a seeming probability as to constitute a basis for stopping appellant's car and such proba-

ble cause as to warrant the search and seizure thereafter made. There was adequate basis in the record for the trial court to make the findings and evaluations which follow.

The Ozark Tobacco and Liquor Store—with its proximity to the Oklahoma border; with its auxiliary, attached, opposite-doored garage; and with its custom of having visiting cars make closed-door entrance into and exit therefrom—had acquired the reputation of being a supplier to Oklahoma liquor haulers. Confirmation had been given to this reputed activity, by the fact that Alcohol Tax Unit agents had on three previous occasions found that cars, which had gone through such a visitation process at the Liquor Store, contained liquor which was being taken into Oklahoma.

Alcohol Tax Unit agents saw appellant's car make such a visitation to the Liquor Store for a thirty-minute period—long enough for it to take on a load of liquor. They saw the garage doors being opened from the inside to receive appellant, as he was coming into the back yard, and the prompt closing made of the doors after his entry into the garage.

This, in connection with his previous journeying past the front of the store, could reasonably tend to persuade that his visit was not a casual but an expected one, and that it was being handled so as to leave the car subject to as little attraction and observation as possible.

After the lapse of a period long enough to enable the car to be loaded, there was a sudden swinging-open of the garage doors, a prompt exiting of the car therefrom, and a proceeding by it northward toward the Missouri-Oklahoma highway. When an agent engaged in following it, he observed that "the car appeared to be heavily loaded"; that it had "a clean Missouri license tag on it", although the body of the car was dirty; and that as it reached the east-west highway it turned onto it in the direction of the Oklahoma border.

We think that these elements in their aggregate could reasonably impress, with more than mere suspicion, that appellant

was not just going about ordinary affairs but was engaged in using his car for improper alcohol-purpose. His travel toward the Oklahoma border; in a car appearing to be heavily loaded; after a visit to the Liquor Store, with its reputation as a supplier to Oklahoma haulers; under the systematic unconventionalities which the agents had found to attend previous obtainments of liquor for attempted movement into Oklahoma; and with its incidence of seeming license-plate switching—all this constituted in our opinion a sufficient warrant and basis for the agents to stop the car, in order to make inquiry of the driver as to his identity and to make observation of his vehicle.

Added to these elements, for purposes of the question of probable cause as to the search and seizure which ensued, were the facts that the stopping of the car, in which the agents warrantedly engaged, had properly revealed that appellant was a resident of Oklahoma; that his car was equipped with overload springs and was carrying a weight-load sufficient to cause even these to be markedly compressed; that, while appellant was occupying the car alone, there was nothing in the interior of the car to which this compression could be conventionally attributed; and that the entire heavy cargo was being carried not simply in the rear end of the car but also under lock and key.

On the existing car-incidents, driver-incidents, and the setting-incidents in which they appeared, we are of the opinion that natural belief could reasonably be produced, within the realities and prudence of proper law-enforcement judgment, that the car contained a cargo of liquor and that this was being attempted to be transported into Oklahoma. With the search and seizure being legal, no question exists as to the sufficiency of the proof to establish appellant's guilt otherwise, since it was conceded for purposes of the trial that the liquor was in fact being transported into Oklahoma.

Affirmed.