Harry Patrick McCARTHY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16021.

United States Court of Appeals
Eighth Circuit.

March 4, 1959.

**474**

Irvine E. Ungerman, Tulsa, Okl. (Manuel Grabel, Maynard I. Ungerman, William Leiter and R. James Unruh, Tulsa, Okl., on the brief), for appellant.

O. J. Taylor, Asst. U. S. Atty., Kansas City, Mo. (Edward L. Scheufler, U. S. Atty., Kansas City, Mo., on the brief), for appellee.

Before JOHNSEN, VAN OOSTERHOUT and MATTHES, Circuit Judges.

JOHNSEN, Circuit Judge.

This case, like No. 16,020, Smith v. United States, 264 F.2d 469, decided concurrently herewith, involves the legality of a search and seizure, in its use to convict appellant, under 18 U.S.C. § 1262, of having unlawfully attempted to transport intoxicating liquor into the "dry" State of Oklahoma. The sufficiency of the evidence to support the conviction, if the search-and-seizure was valid, is not otherwise challenged. The trial was to the same judge and the same punishment was meted out as in the Smith case.

Two weeks after the events of the Smith case, in another surveillance made by Alcohol Tax Unit agents of the Ozark Tobacco and Liquor Store, they observed appellant's car making a visitation to the Liquor Store, with characterizing elements such as had been connected with the unlawful ventures of Smith and other Oklahoma liquor haulers whom the agents had intercepted.

There was the unconventional running of the car into the closed garage for a limited period; the sudden swinging open of the doors and exiting of the car after being concealed from view long enough to have permitted its loading; the proceeding of the car toward the Oklahoma highway; and the indication of carried cargo, from (as described by one agent) the car being "low in the rear" or "hanging a little bit", or (as testified by another) "it appeared to be heavily laden".

These elements, with their contextual significance from the Liquor Store's reputation as a supplier of Oklahoma haulers and from the agents' direct experience in other cases, were supplemented in the present situation by the circumstance that, after appellant had proceeded a quarter of a mile beyond the Liquor Store, he left the highway and traveled for some distance on a graveled road before he cut back onto the highway again. In relation to the fact that the car bore a Missouri license plate, this turning onto a local road could allayingly impress one who had observed appellant's visit to the Liquor Store that he was merely a Missourian and was without interstate destination. Similarly, one seeing only his entry from the graveled road onto the highway, without knowledge of his preceding visit to the Liquor Store, would ordinarily have no

reason to attach any significance to his turning toward the Oklahoma highway. But to the alcohol agents, who had observed the incidents of the car's visit to the Liquor Store and its indication of load on exiting, and who had followed with their field glasses its detouring course away from and then back toward the Oklahoma highway, the graveled-road interlude could properly add to the seeming probability warranting them in stopping the car for identification of the driver or observation of the vehicle.

██ We think that the elements of the present situation gave rise to such seeming probability as would be capable of reasonably impressing with more than mere suspicion that appellant was not going about ordinary affairs but was presumably engaged in using the car for improper alcohol-purpose. Within the basis discussed in Smith opinion, this entitled the agents to at least stop the car for the purpose of inquiring of the driver as to his identity and making observation of the vehicle.

█ Whether, if the stopping had resulted in adding no further elements to the situation, the agents would have been justified in making a search of the car, we need not decide. As in the Smith case, elements were properly added by the stopping, which, in conjunction with what the agents had previously seen and knew, were entitled to be regarded as constituting adequate probable cause to warrant the search and seizure thereafter made. Thus, there was evidence from which the trial court could find that, when the agents undertook to stop appellant's car on the highway, he refused to heed their request and attempted to drive around them; that, as appellant tried to pass the agents, one of them recognized him and knew him as being engaged in the liquor business at Tulsa, Oklahoma; that observation of the car showed it to be equipped with overload springs which were compressed; and that there was nothing contained in the interior of the car to which this compression could be conventionally attributed, but the heavy cargo which the car was carrying was located in the rear end of the car under lock and key.

On all the elements of information and knowledge which the agents had, we are of the opinion, as in the Smith case, that natural belief could reasonably be produced, within the realities and prudence of proper law-enforcement judgment, that the car contained a cargo of liquor and this was being attempted to be transported into Oklahoma. As in the Smith case, beyond the question of the legality of the search and seizure, no issue exists as to the sufficiency of the proof to establish appellant's guilt. It was conceded for purposes of the trial that the liquor was in fact being transported into Oklahoma, if the search and seizure made was competent to prove the existence of the liquor.

One concluding comment should perhaps be made. As bearing on the impropriety of the stopping made, in its relation to the reasonableness of the search and seizure in its whole, appellant claimed on the trial that the agents had deliberately rammed into his car. Testimony on the part of the driving agent, however, which the court was entitled to credit, was to the effect that there had been no attempt to stop appellant by ramming into his car. He stated that when he saw that, despite the turning-on of his red light and a waving by him of his arms, appellant was not slowing down but was apparently intending to drive around his car, he undertook to make a sudden "U-turn", in order to get into position to pursue appellant. The acceleration in which he engaged, while he was thus swinging, caused his car to unintentionally collide with the right-rear side of appellant's car, from the coincidence of its passing at the precise moment. We need not further discuss the question, nor do we intend any implication on whether, if the facts had been found to be as appellant claimed, this could have had any significance in the situation.

Affirmed.